**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 13-cv-01611-REB-CBS

SCHEEF & STONE, LLP, and
GRADY DICKENS,

      Plaintiffs,

v.

SUSANNA E. FOELS,

      Defendant.

---

**ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

---

**Blackburn, J.**

      The matter before me is **Plaintiffs' Motion for Summary Judgment and Brief

in Support** [#40],[1] filed April 30, 2014.  I grant the motion and dismiss the counterclaim

for legal malpractice.[2]

**I.  JURISDICTION**

      I have jurisdiction over this matter under 28 U.S.C. § 1332 (diversity of

citizenship).

**II.  STANDARD OF REVIEW**

      Summary judgment is proper when there is no genuine dispute as to any material

---

    [1]  "[#40]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

    [2] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument.  Thus, the motion stands submitted on the briefs.

fact and the movant is entitled to judgment as a matter of law.  **FED. R. CIV. P.** 56(a);

***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265

(1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.

***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586,

106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d

1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome

of the case.  ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505,

2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of

a genuine fact issue.  ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d

1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995).  By contrast, a movant

who bears the burden of proof must submit evidence to establish every essential

element of its claim or affirmative defense.  ***See In re Ribozyme Pharmaceuticals, Inc.***

***Securities Litigation***, 209 F.Supp.2d 1106, 1111 (D. Colo. 2002).  In either case, once

the motion has been properly supported, the burden shifts to the nonmovant to show, by

tendering depositions, affidavits, and other competent evidence, that summary

judgment is not proper.  ***Concrete Works***, 36 F.3d at 1518.  All the evidence must be

viewed in the light most favorable to the party opposing the motion.  ***Simms v.***

***Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165

F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999).

## III.  ANALYSIS

The sole remaining claims in this lawsuit are the counterclaims for legal

malpractice and breach of fiduciary duty of defendant/counterclaim plaintiff Susanna

Foels.[3]  In March 2000, Ms. Foels engaged the firm of Ernst & Young to provide her with

tax advice.  More specifically, Ernst & Young agreed to help Ms. Foels implement a tax

strategy known as a Nominal Interest Make-Up with Charitable Remainder UniTrust

("NIMCRUT"), which ostensibly would allow her to defer taxation of capital gains on the

sale of her stock in Microsoft.  Ernst & Young in turn engaged plaintiff/counterclaim

defendant Grady Dickens of the Texas law firm of Scheef & Stone, LLP, to form the

legal entities to be used in the NIMCRUT.

By her counterclaims, Ms. Foels claims that Mr. Dickens committed legal

malpractice and breach of fiduciary duty by failing to discuss her investment objectives

with her, specifically whether the NIMCRUT was suitable for her needs and goals, which

she alleges it was not.[4]  Over time, the NIMCRUT lost of money, and Ms. Foels

---

[3]  Plaintiffs Scheef & Stone, LLP, and Grady Dickens originally filed this suit seeking a declaration
that Ms. Foels's claims against them were not subject to arbitration.  Ms. Foels subsequently dismissed
Mr. Dickens and the law firm from the arbitration.  Plaintiffs therefore acknowledge that their original claim
is moot.  (*See* **Plf./Countercl. Def. Br.** ¶ 7 at 3.)  I therefore will dismiss it on that basis.

[4]  Specifically, according to the allegations of Ms. Foels's counterclaim,

> 22.  Prior to her transfer of the 53,000 shares of Microsoft Shares to the
> NIMCRUT, Ms. Foels understood that the NIMCRUT could be liquidated
> or distributed at a later date, and/or that she could take distributions from
> the NIMCRUT at a later date.  The ability to take distribution was
> important to Ms. Foels as she anticipated the potential need for money to
> pay for her children's education or for other similar family expenses.

> 23.  Prior to her transfer of the 53,000 shares of Microsoft Shares to the
> NIMCRUT, neither Mr. Dickens, nor anyone from Scheef & Stone
> advised Ms. Foels that, in fact, (1) the NIMCRUT could not be liquidated
> or distributed; (2) that she could not take distributions of any
> accumulated income in the NIMCRUT unless the principal in the

ultimately sold it in September 2012 at a substantial discount.  Mr. Dickens and Scheef

& Stone now have moved to dismiss Ms. Foels's counterclaim for breach of fiduciary

duty as subsumed by her counterclaim for legal malpractice.  They further maintain that

the counterclaim for malpractice should be dismissed as barred by limitations.

The parties agree that Texas law applies to the resolution of Ms. Foels's

counterclaims, either by virtue of the choice of law provision of the engagement letter

with Ernst & Young or, alternatively, as a result of application of Colorado's choice-of-

law rules.  Texas adheres to an "anti-fracturing" rule, pursuant to which

> courts do not allow a case arising out of an attorney's
> alleged bad legal advice or improper representation to be
> split out into separate claims for negligence, breach of
> contract, or fraud, because the real issue remains one of
> whether the professional exercised that degree of care, skill,
> and diligence that professionals of ordinary skill and
> knowledge commonly possess and exercise.  Regardless of
> the theory a plaintiff pleads, as long as the crux of the
> complaint is that the plaintiff's attorney did not provide
> adequate legal representation, the claim is one for legal
> malpractice.

*Kimleco Petroleum, Inc. v. Morrison & Shelton*, 91 S.W.3d 921, 924 (Tex. App. –

Fort Worth 2002, pet. denied) (internal citations and quotation marks omitted).

Such is the nature of Ms. Foels's breach of fiduciary duty claim here.  Ms. Foels

specifically pleads that Mr. Dickens and Scheef & Stone "at all relevant times . . . were

acting as her lawyer and advisor" and that they owed her fiduciary duties "[a]s her

---

NIMCRUT appreciated each year at a specified rate; and (3) the
NIMCRUT would have to substantially make up the lost income shortfalls
of previous years in order to make any distributions in a given year.

(**Defendant's Answer to Plaintiffs' Complaint for Declaratory Judgment and Other Relief, Defenses and Affirmative Defenses; Counterclaims and Jury Demand** ¶¶ 22-23 at 9 [#19], filed August 23, 2014.)

lawyer." (**Def. Counterclaim** ¶¶ 40 & 43 at 11-12 [#19], filed August 23, 2013.)  Ms.

Foels's attempt to distinguish her counterclaim for breach of fiduciary duty from an

assertion of legal malpractice is thoroughly unconvincing,[5] especially in light of the fact

that she purports to predicate the breach of fiduciary duty counterclaim on alleged

violations of the Texas Disciplinary Rules of Professional Conduct.[6]  I therefore find and

conclude that Ms. Foels has not asserted a cognizable counterclaim for breach of

fiduciary duty apart from her claim of legal malpractice.

Claims of legal malpractice are subject to a two-year statute of limitations under

Texas law.[7]  Tex. Civ. Practice & Rem. Code § 16.003(a); ***Willis v. Maverick***, 760

S.W.2d 642, 644 (Tex. 1988).   Such a claim "accrues when the nature of the injury is

discovered or should have been discovered in the exercise of reasonable care and

diligence." ***Estate of Jobe v. Berry***, 428 S.W.3d 888, 901-02 (Tex. App. – Texarkana

2014, no writ) (internal citations and quotation marks omitted).  "Discovery occurs when

---

[5]  Ms. Foels asserts that her "claims for professional negligence against the Scheef Parties [are] based on their inadequate representation in the underlying transaction which led to Ms. Foels ill-advised investment in the NIMCRUT," but that "[c]omparatively, [her] claim for breach of fiduciary duty is based on the Scheef Parties' failure to make full and accurate disclosures to her both in connection with the establishment of the NIMCRUT and regarding the scope of their representation which they now claim was limited in nature." (**Def./Counterclaim Plf. Resp. Br.** at 18.)  The court perceives no relevant distinction between these two sets of alleged circumstances, both of which are based plainly on the existence of an attorney-client relationship and Mr. Dickens's and Scheef & Stone's alleged provision of inadequate legal advice.

[6]  Given my resolution of the applicability of Texas's anti-fracturing rule to Ms. Foels's breach of fiduciary duty counterclaim, I do not address whether there exists a private cause of action for putative violation of attorney rules of professional conduct and/or disciplinary rules.

[7]  Texas's counterclaim revival statute, Tex. Civ. Prac. & Rem. Code § 16.069(a), is inoperative in this instance because the original suit did not seek affirmative relief but only declaratory judgment. ***See Holman Street Baptist Church v. Jefferson***, 317 S.W.3d 540, 546 (Tex. App. – Houston [14th Dist.] 2010, pet. denied) ("Courts have interpreted section 16.069 as permitting a party's otherwise time-barred counterclaims or cross claims only when the opposing party has sought 'affirmative relief,' rather than just a declaration on a dispute between the parties.").

a plaintiff has knowledge of such facts, conditions, or circumstances as would cause a

reasonably prudent person to make an inquiry that would lead to discovery of the cause

of action." *Id.* (internal citations and quotation marks omitted).  Although accrual is a

question of fact, it may be determined as a matter of law where reasonable minds could

not differ as to the conclusion to be drawn from the undisputed facts.  *Childs v.*

*Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998).

Indulging every reasonable inference in favor of Ms. Foels, I nevertheless find

and conclude that no reasonable jury could find that she was not on notice of facts that

would have led a reasonable person to discover her cause of action by no later than

July 2010.  At that time, the investment adviser whom Ms. Foels hired to investigate the

NIMCRUT, John Mockovciak, advised her to consult a CPA, after his own in-house tax

attorney questioned "who's responsible for creating this mess in the first place," and

suggested that "your client has a real mess on her hands[.] . . .  Maybe she should

speak with an attorney about taking some legal action against the clowns who

recommended this arrangement."  (**Plf./Countercl. Def. Br. App.** at 131.)  Although Mr.

Mockovciak did not recall specifically what he told plaintiff at that time, he testified that

he did convey to her "[g]enerally the severity of which the CPA and the tax attorney felt

about the NIMCRUT and its structure."  (*Id.* at 92.)  That testimony is corroborated

further by an April 2010 email between Ms. Foels and Mr. Mockovciak suggesting that

they consult with an accountant to "assess if [it] makes sense to dissolve" the

NIMCRUT.  (*Id.* at 132.)

These facts are more than sufficient to have put a reasonable person on notice

that the NIMCRUT was potentially problematic in a global (and perhaps even more alarming) sense.  "Once a claimant learns of a wrongful injury, the statute of limitations begins to run even if the claimant does not yet know 'the specific cause of the injury; the party responsible for it; the full extent of it; or the chances of avoiding it.'"  ***Exxon Corp. v. Emerald Oil & Gas Co.***, 348 S.W.3d 194, 207 (Tex. 2011) (quoting ***PPG Industries, Inc. v. JMB/Houston Centers Partners Ltd. Partnership***, 146 S.W.3d 79, 93-94 (Tex. 2004)).  It is not relevant for purposes of accrual that Ms. Foels did not confirm specifically until December 2011 that she could not take distributions from the NIMCRUT, as she had believed to be the case.  Her burden of inquiry began to run at the time she first learned of facts that caused her to investigate, not at the time she ultimately confirmed the existence of a problem.

Thus, Ms. Foels' cause of action accrued, at the latest, in July 2012.  Assuming *arguendo* that it would be proper to retroactively date the counterclaim to the date of its (inappropriate) filing in arbitration, as Ms. Foels suggests, the claim was filed on November 30, 2012, more than two years later.  Thus,the counterclaim for legal malpractice is time barred.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Plaintiffs' Motion for Summary Judgment and Brief in Support** [#40], filed April 30, 2014, is **GRANTED**;

2. That **Plaintiffs' Motion To Exclude or Limit Expert Testimony Under Rule 702 and Brief in Support** [#42], filed April 30, 2014, is **DENIED AS MOOT**;

3.   That defendant's counterclaims against plaintiffs are **DISMISSED WITH PREJUDICE**;

4.   That plaintiffs' claim for declaratory judgment is **DENIED AS MOOT**;

5.   That judgment with prejudice **SHALL ENTER** on behalf of plaintiffs, Scheef & Stone, LLP, and Grady Dickens, against defendant, Susanna E. Foels, as to the counterclaims asserted by Ms. Foels against them in this action;

6.   That all currently pending pretrial deadlines, together with the combined Trial Preparation Conference and Final Pretrial Conference, currently scheduled for **January 30, 2015**, at 10:00 a.m., and the trial to the court, currently scheduled to commence on **February 2, 2015**, are **VACATED**; and

7.   That plaintiffs are **AWARDED** their costs, to be taxed by the clerk of the court pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated October 30, 2014, at Denver, Colorado.

**BY THE COURT:**

Bob Blackburn

Robert E. Blackburn
United States District Judge